IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ACADIA INSURANCE COMPANY, INC., AS
SUBROGEE OF PREMIER HOSPITALITY
HOLDINGS, LLC                                                                                    PLAINTIFF

VS.                                                                         CAUSE NO. 3:21-CV-31-MPM-RP

AAON, INC.                                                          DEFENDANT/THIRD-PARTY PLAINTIFF

VS.

GORHAM/SCHAFFLER, INC.; ET AL.                                          THIRD-PARTY DEFENDANTS

### ORDER

This court presently has before it a motion filed by third-party defendant Gorham/Schaffler, Inc. ("GS") to dismiss a third-party complaint filed against it by defendant AAON, Inc. This court also has before it a motion filed by GS to dismiss a cross-claim filed against it by fellow third-party defendant Mid-South Mechanical Contractors, Inc. ("Mid-South"). Having considered the memoranda and submissions of the parties, this court is prepared to rule.

This is a subrogation action arising out of a January 2, 2018 fire at a Home2Suites Hotel in Oxford which was allegedly caused by a defective heating and cooling unit manufactured by AAON and installed on the hotel's roof. As Home2Suites' insurer, plaintiff Acadia Insurance Company, Inc. ("Acadia") paid almost ten million dollars in policy benefits resulting from the fire, and, in this action, it seeks to recover those amounts from AAON. In response to Acadia's claim against it, AAON filed third party indemnity actions against GS and Mid-South. These companies were responsible for the installation, start-up, and testing of the subject unit, which, AAON contends, "was in proper working condition, had no leaks, and was in no manner defective" when it left its control. AAON argues that the unit's failure can only be attributed to the actions of GS and/or Mid-South

1

during installation and/or service, and, based on this contention, it has filed third party claims against them. [Third party complaint at 3].

In seeking to dismiss AAON's third-party action against it, GS notes that, as a common law indemnity action, the third-party claim must meet the requirements of FRCP Rule 14. AAON concedes that this is the case, and the parties likewise agree that it may only seek indemnity under Rule 14 if the original complaint filed by Acadia contains a claim that, if proven true, could result in AAON being liable to Acadia for the actions of the third party defendant GS. *See e.g. Mitchell v. Hood,* 614 Fed. Appx. 137, 140 (5th Cir. 2013). GS argues that, in this case, AAON faces no potential liability resulting from its actions, writing that:

> The only allegation in Acadia's Complaint that AAON claims could result in its being held liable for the actions of GS is contained in paragraph 28 of the Complaint. This allegation alleges that AAON "*failed to properly secure and tighten internal gas piping connections inside the AAON Heater to prevent natural gas leaks within the unit.*" (Doc. 2, page 4, paragraph 28, emphasis added).
> AAON suggests that this allegation relates to the start-up of the HVAC, which AAON claims was the responsibility of GS. This is simply not a reasonable interpretation of Acadia's Complaint; and as such, there is simply no way that AAON could ever be held liable for anything that GS allegedly did or did not do.

[G/S's brief at 2-3].

In response, AAON writes that:

> G/S is incorrect in stating that there is no allegation in Acadia's Complaint that could possibly result in AAON being liable for any actions of G/S. To the contrary, Acadia specifically alleges AAON failed to properly secure and tighten internal gas piping connections. If the jury finds the piping connection was not secure and holds AAON liable, then AAON could be liable for GS's failure to properly test the unit, including the gas piping connections.

[AAON's brief at 3-4].

In its reply brief, GS responds that Acadia's complaint makes it clear that

> For this Court, the issue of whether or not AAON can proceed under Rule 14 against GS comes down to one paragraph in Acadia's Complaint. In Paragraph 28 of Acadia's Complaint, Acadia alleges that AAON **"*failed to properly secure and tighten internal gas piping connections inside the AAON Heater to prevent natural gas leaks within the unit.*"** (Doc. 2, page 4, paragraph 28, emphasis added). Obviously, it was AAON's responsibility during the manufacturing process to "properly secure and tighten internal gas piping

2

> connections inside the AAON Heater to prevent natural gas leaks within the unit." No such duty rests with GS. ***Proof positive of this fact is AAON's failure to make such an allegation against GS in the Amended Third-Party Complaint.***
> The reason AAON failed to allege that GS had such a duty is simple: the allegations in Acadia's Complaint are entirely related to the manufacturing process as opposed to any actions of GS that occurred after the HVAC left the control of AAON. * * * A jury is going to find AAON liable because the piping connection was loose, not because GS allegedly failed to figure out that the piping connection was loose after it left AAON's possession. In other words, AAON's liability is not contingent on anything done or not done by GS.

[Reply brief at 1-2].

GS further argues that:

> Clearly, AAON is inventing a claim related to the start-up of the HVAC for the sole purpose of joining GS as a Third-Party Defendant. Reading paragraphs 27 and 28 of Acadia's Complaint together, it is clear that the allegation concerning the failure to properly tighten internal gas pipe connections is related to the design and manufacture of the HVAC, not the testing or start-up of the HVAC. (Doc. 2). If Acadia were truly alleging that the testing or start-up of the HVAC was a cause of the fire, then it would have stated that in the Complaint. If Acadia were truly alleging that the start-up of the HVAC was a cause of the fire, then it would have sued GS.

[Brief at 2].

While GS may (or may not) eventually be proven to have the better of this argument, this court is given pause by the fact that Acadia's complaint makes repeated references to the manner in which the unit was "installed," rather than "manufactured." For example, paragraph 34 of Acadia's complaint alleges that the unit's "internal natural gas piping was installed in such a manner that natural gas could leak inside the unit." [Complaint at 5]. In the court's view, it is arguably difficult to draw a clear factual line between the manner in which certain piping was "installed" by AAON's employees at the factory and the installation which GS employees performed during the startup process in Oxford. In so stating, this court notes that paragraph 33 of the complaint alleges that AAON "engineered, manufactured, marketed, and sold the AAON heater that was *installed* at the Oxford Home2Suites hotel." This language arguably suggests that, in referring to "installation,"

3

Acadia was referring to the sort of on-site work performed by GS in Oxford, and not the work performed by AAON's employees at the factory.[1]

This court further notes that AAON relies partly upon a contractual, not Rule 14, indemnity provision which required GS "to totally defend, indemnify and hold harmless AAON, Inc. for any claim by the customer for non-performance related to the outside net terms, i.e., the *installation, start-up, and testing of the subject unit.*" [Doc. 90, page 8 (emphasis added)]. GS thus agreed to indemnify AAON for liability related to the "installation" of the unit, and this court is not prepared to say, at this juncture, that this provision was not implicated by Acadia's complaint in this case. This court's conclusion in this regard is informed by its belief that it would be best for GS to participate in discovery in this case, so that all parties may have a clear picture regarding the demarcation between AAON's actions in manufacturing the unit and GS's actions in installing it. GS's motion to dismiss the third party complaint asserted against it will therefore be denied.

This court now turns to GS's motion to dismiss the cross-claim filed by fellow third-party defendant Mid-South. While this motion involves a cross-claim rather than a third-party claim, the relevant law is similar, since Mid-South relies upon a common law indemnity theory in seeking recovery against GS. In this case, however, the right to indemnity is judged by reference to the third party complaint filed by AAON, and not the initial complaint filed by Acadia. In arguing that it might at least potentially have a cross-claim against GS based on AAON's third party complaint, Mid-South writes that:

> Mid-South placed the unit, connected a gas line, performed a pressure test of the gas line it connected to the unit (not testing of the unit itself), and installed ducts to the unit. Upon information and belief, GS performed start-up and testing of the subject unit. Clearly, Mid-South and GS did not each perform "installation, start-up, and testing" as alleged in AAON's Complaint. Therefore, to the extent that Mid-South is held responsible for work GS performed (or had a duty to perform), Mid-South is entitled to common law indemnity from

---

[1] In so stating, this court acknowledges that this language is included in a claim entitled "products liability," but, at the same time, it is concerned more with the substance of the claims in this case, rather than labels.

4

> GS. Given that AAON's Complaint makes the same legal argument against Mid-South and GS (i.e., Mid-South and GS are liable to AAON if AAON is held liable for actions of Mid-South/GS), Mid-South's cross-claim against GS should survive a Motion to Dismiss if AAON's Complaint against Mid-South and GS survives the pending Motions to Dismiss.

[Brief at 2].

In its reply brief, GS argues that this argument is insufficient to establish a potential cross-claim, writing that:

> In its memorandum brief, Mid-South states that it is only seeking common law indemnity from GS to the extent Mid-South is liable for work GS performed (or had a duty to perform). However, neither Mid-South's brief nor the Crossclaim itself provides any factual statement or legal assertion as to exactly what duty GS may have owed to Mid-South. Without some explanation for why or how Mid-South could be held liable for the actions or inactions of GS, the Crossclaim should be dismissed.

[Reply brief at 1-2].

In explaining its contention that it owed no duty to Mid-South, GS further argues that:

> A classic example of common law indemnity would be when a contractor (the claimant) is held liable for damages suffered by a homeowner (injured party) that were caused by a subcontractor. In such a scenario, the contractor would be held liable to the homeowner. Given the fact that the subcontractor was at fault, however, the subcontractor would be required to indemnify the contractor for the damagers assessed to the contractor.
> This is not the situation in the case at bar. In this case, Mid-South does not allege that GS and Mid-South are in a contractor-subcontractor relationship or that Mid-South hired GS to perform work on the project. In other words, it is not alleged in the Crossclaim that GS owed any duty to Mid-South.
> In fact, the only possible way that Mid-South could ever be held liable in this case to the injured party is if it actively or affirmatively participated in the wrong. As Mid-South points out in its memorandum brief, GS and Mid-South performed separate work on the project (Doc. 114, p. 2) Clearly, Mid-South can only be held liable for its work, not the work of GS. For these reasons, Mid-South's Crossclaim should be dismissed since it will only be found liable in this case for its own active or affirmative participation in the "wrong."

[*Id.* at 2].

While this court does not rule out the possibility that Mid-South might eventually develop facts in support of its cross-claim against GS during discovery, it agrees with GS that the decision to file a cross-claim based on such a limited understanding of the facts was ill-advised. Indeed, Mid-South's arguments against dismissal of its cross-claim strike this court as constituting vague generalities regarding what *might* eventually be proven in discovery, with insufficient indication that

5

it is presently aware of any facts which might lead it to believe that it faces potential liability to AAON for GS's work.

At the same time, this court emphasizes that there is an important difference between GS's motion to dismiss MidSouth's cross-claim and its motion to dismiss AAON's third party claim. That difference lies in the fact that, in light of AAON's third party complaint and this court's ruling today, both Mid-South and GS will remain parties to this action, regardless of the status of the cross-claim. That being the case, this court can discern little reason why it should, at this juncture, make a final and irrevocable ruling regarding what claims may or may not exist between Mid-South and GS in this case. This court likewise sees no reason why it should prevent Mid-South from making inquiries in this regard during discovery.

With these considerations in mind, this court will grant GS's motion to dismiss Mid-South's cross-claim, but it will do so without prejudice to Mid-South's ability to re-file a cross-claim against GS if it develops concrete facts in support of such a claim during discovery. In the court's view, such a ruling serves to balance Mid-South's right to develop facts in support of any potential claims it might have in this case, while recognizing that its decision to file a cross-claim based upon such a limited understanding of the facts was, at best, premature.

In light of the foregoing, it is ordered that GS's motion to dismiss AAON's third-party complaint [50-1, 95-1] is denied, and its motion to dismiss Mid-South's cross-claim [103-1] is granted.

This, the 28th day of February, 2022.

    /s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**